EMMA NICHOLS *vs.* NEW ENGLAND TELEPHONE &
TELEGRAPH COMPANY.
JANUARY 16, 1937.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. This action of trespass on the case for negligence is before us on the plaintiff's single exception to the granting of the defendant's motion for a new trial. The case was tried before a justice of the Superior Court sitting with a jury and a verdict for $5,500 was returned in favor of the plaintiff. The defendant moved for a new trial on the grounds that the verdict was against the evidence and that it failed to do justice between the parties. This motion was granted by the trial justice.

The plaintiff claims to have been thrown to the ground and injured on January 9, 1934, by the caving-in of a

certain area on the dirt sidewalk of Plainfield street near Killingly street in the City of Providence. Plainfield street at that point runs east and west. Killingly street and Lowell avenue approach Plainfield street from the northwest and north respectively, meeting each other at an angle just before they enter Plainfield street through a common opening. The continuation of these two streets on the southerly side of Plainfield street is called Lowell avenue.

Telephone poles, identified by odd numbers, stand near the curb on the northerly side of Plainfield street. These poles carry service wires of the defendant and other public utility companies. Pole 89 is located at the northeast corner of Plainfield street and Lowell avenue. Pole 91, which is the center of controversy in this case, stands near the corner of Plainfield and Killingly streets. The curbing along this side of Plainfield street was moved back and reset by the City of Providence at some indefinite time in 1931 or later. In the spring of 1932, the defendant substituted a new pole for pole 91. Poles 93 and 95 are west of pole 91.

The plaintiff, a woman some fifty-three years old, ran a small store on the southeasterly corner of Plainfield street and Lowell avenue. Her home was on the northerly side of Plainfield street, a short distance west of pole 91. She testified that in the afternoon of January 9, 1934, she left the store for her home and crossed Plainfield street in a diagonal direction to the northwesterly corner of Plainfield and Killingly streets; that as the sidewalk of Plainfield street at that point was full of puddles and in a general muddy condition, she walked in the roadway until she was a very short distance west of pole 91 when she stepped upon the curb; that she then put her right foot out on the dirt part of the sidewalk, and that the ground under that foot caved-in and she fell. Her contention is that the caving-in of the dirt sidewalk at that place was due to the negligent filling of the hole that was left when the defend-

ant relocated pole 91 in the spring of 1932. The character of the cave-in, which was close to the curb, was differently described by the witnesses for the plaintiff and varied from a hole near pole 91 about the size of the plaintiff's foot that "seemed deep" to a hole almost two feet deep and about three feet from the pole.

The testimony for the defendant on this point is that the new pole 91 was not relocated but was placed in the same hole in which the old pole had stood. According to the record, this work was done in the following manner: the old pole was steadied by a temporary guy rope and cut at about the ground level. The bottom of the pole above ground was then pushed out towards the curb so as to expose the top of the stump that remained in the ground; a rope was then attached to this stump and it was pulled out by means of a winch located on a work truck. The new pole was placed in the hole from which the stump was removed, the earth was tamped down at its base, the bottom of the old pole was pushed back beside the new pole, and the two poles were wired together about four feet above the ground and some eight feet down from the top. The testimony shows that this method was followed in order that the wires of the other companies might be transferred by them to the new pole. When this was done, the old pole was unfastened from the new pole and carried away. Considerable evidence was also given in behalf of the defendant, through witnesses, plans and other records, tending to prove that pole 93 and not pole 91 was the one relocated.

The plaintiff argues that the trial justice misconceived the evidence in granting a new trial. If this be so, then his disapproval of the jury's verdict would not be entitled to the weight that is usually given in this court to such a decision. In view of this contention, we have made an independent examination of the entire record in the case and find that the rulings, charge and rescript of the trial justice show a proper appreciation of the evidence. We

have expressed ourselves in general terms and have purposely avoided discussing the testimony so that the case may be retried without any appraisal of such testimony by us now.

The plaintiff also argues that the trial court, "having departed from the rulings made by it during the course of the trial, this case must be treated as if the motion for a new trial were first being heard here, and the trial court's decision should be completely disregarded." The contention is that because the trial justice believed there was sufficient evidence in the plaintiff's case to warrant his denying the defendant's motion for a nonsuit, and further because at the conclusion of all the testimony he denied the defendant's motion for a directed verdict and submitted the case to the jury, that, therefore, the trial justice could not review the jury's verdict on a motion for a new trial. This tenuous argument is without merit in view of our well established practice. The rules that apply in passing on a motion for a nonsuit, or a direction of verdict, or a motion for a new trial are so different and have been so often expressed by this court as to require no discussion here. The duty that rests upon the trial justice in considering a motion for a new trial was carefully reviewed by this court in *McMahon* v. *Rhode Island Co.*, 32 R. I. 237. A proper discharge of the duty imposed upon him in such a case requires him to pass his independent judgment upon the weight of the evidence and the credibility of the witnesses. *Surmeian* v. *Simons*, 42 R. I. 334; *Spiegel* v. *Grande*, 45 R. I. 437; *Placella* v. *Robbio*, 47 R. I. 180. In the instant case, the trial justice followed the correct rule in passing on the defendant's motion for a new trial and, as the rescript is consistent with the facts in evidence, the granting of the motion is, therefore, entitled to the weight that any well considered decision on such a motion deserves under our practice.

The plaintiff further contends that the trial justice erred in granting the defendant's motion for a new trial, because,

on such a motion, "it is not necessary that the plaintiff's testimony outweigh the defendant's testimony, but rather, the verdict must be sustained unless the testimony preponderates against it." To support this contention he cites *Spiegel* v. *Grande, supra,* and *Humes* v. *Schaller,* 39 R. I. 519. In the *Spiegel* case the trial court, in sustaining a verdict for the plaintiff said that it expected the jury to bring in a different verdict but that it did not have "such firm conviction of their error" as to say that the verdict was against a fair preponderance of the evidence. When this language was questioned by the defendant in this court, it was interpreted to mean that, after considering the credibility of the witnesses and the weight of all the evidence, the trial justice found the matter so nearly balanced that he was unwilling to oppose his opinion to the judgment of the jury. In that opinion, at page 440, the court says: "A justice of the Superior Court properly should give weight to the jury's finding, and not set it aside upon a mere doubt as to its correctness." In the *Humes* case, the trial court also sustained a verdict for the plaintiff in rather ambiguous language. The opinion of this court in that case, after referring to previous decisions that discussed the duty of a trial judge in passing upon a motion for a new trial, at page 522, says: "From them two rules emerge, namely; 'when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way;' but when his judgment tells him that the verdict is wrong, because it fails to respond truly to the real merits of the controversy and to administer substantial justice, and is against the fair preponderance of the evidence, then his duty is to set aside the verdict."

Neither of these cases supports the plaintiff's contention that, on a motion for a new trial, a verdict must be sustained unless the testimony preponderates against it.

These decisions and others that followed enunciate the rule that, where there is conflicting evidence of substantially equal weight which would naturally and fairly lead different minds to different conclusions, and the jury under such circumstances has determined the issue in favor of the plaintiff, the trial justice is not justified in granting a new trial even though he entertains a doubt as to the correctness of the verdict or his judgment inclines against the finding. On the other hand, a trial justice would be remiss in the performance of his duty if, after considering the credibility of the witnesses and weighing all the evidence, he should fail to grant a motion for a new trial whenever in his sound judgment the verdict of the jury is not supported by a fair preponderance of the evidence, and therefore fails to respond truly to the real merits of the controversy. *Placella* v. *Robbio, supra.*

Mere inaccuracy of expression in a decision on a motion for a new trial does not constitute prejudicial error if the decision, when read and considered as a whole, shows that the trial justice performed his duty with proper regard to the rights of the parties under the law. In the instant case, the trial justice in his discussion of the evidence states in his rescript that "the plaintiff should be held to very clear proof of such negligence." From this statement the plaintiff argues that the trial justice, in passing on the question of the defendant's negligence, departed from the accepted rule that governs in negligence cases, namely, that the plaintiff is only required to prove the defendant's negligence by a fair preponderance of the evidence. In view of this contention we have carefully examined the rescript and find upon such examination that, when the rescript is considered as a whole, the trial justice reached his conclusion by applying the very rule of law that the plaintiff properly urges upon us as the one that should guide him in passing upon that issue. We concede that the statement above quoted is not the proper rule of law to be applied in determining the question of the defend-

ant's negligence. But unfortunate as this incautious expression may be, it cannot affect the decision itself when it appears from an examination of the entire rescript that the trial justice in fact applied the correct rule in reaching his conclusion on this point.

In our consideration of the record before us and of the plaintiff's contentions in respect thereto, we have given the plaintiff the benefit of every inference that was reasonably justified by the evidence. Yet, we cannot say that the trial justice was clearly wrong in deciding that the defendant was entitled to a new trial.

The plaintiff's exception is overruled and the case is remitted to the Superior Court for a new trial.

*Peter L. Cannon, Sidney L. Rabinowitz,* for plaintiff.

*Swan, Keeney & Smith, Dana M. Swan, Eugene J. Phillips,* for defendant.