HANS ANDERSON *vs.* GEORGE JOHNSON *et al.*
NOVEMBER 18, 1937.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This action of assumpsit was tried before a justice of the superior court, sitting with a jury, and resulted in a verdict for the plaintiff in the sum of $2000. It is before this court solely upon the plaintiff's exception to the action of the trial justice in granting the defendant's motion for a new trial.

The plaintiff, a man seventy-nine years old, who testified through an interpreter, brought this action against Hilda Johnson, widow of Arthur Anderson, who was the plaintiff's deceased son, and against George Johnson, her second husband. At the conclusion of the plaintiff's case, a nonsuit was entered without objection as to the defendant George Johnson. The case then proceeded to a verdict against Hilda Johnson, who is hereinafter referred to as the defendant.

The declaration contains counts in special assumpsit alleging an oral agreement between the plaintiff and defendant whereby she agreed, in her individual capacity, to continue employing the plaintiff on the farm of her deceased husband at a monthly wage of forty-five dollars; and

also contains counts in general assumpsit for work and labor performed upon a *quantum meruit* basis. The plaintiff claims wages under such agreement, or the value of the work and labor performed by him for the defendant at her request, from June 1930 to January 1934.

It appears that Arthur Anderson, who owned the farm, died June 4, 1930 and his widow, the defendant, who was then Hilda Anderson, was appointed administratrix of his estate.

The plaintiff testified that he came to the United States from Norway in 1914 to live with his son Arthur in Pennsylvania; that when Arthur came to Rhode Island, he also came to this state and lived with him on the latter's farm in the town of Narragansett; that he, the plaintiff, worked on the farm for Arthur while the latter was engaged as chauffeur elsewhere; and that his monthly wage, under an agreement with Arthur, was forty-five dollars until Arthur's death in 1930; that the alleged agreement in question was made by this defendant at a family conference after Arthur's death, when she agreed to continue to operate the farm on the same basis as before.

The plaintiff also testified in detail as to the nature of the work performed by him on the farm before Arthur's death, and allegedly continued by him under agreement with the defendant, and with her approval, during the period covered by this action. His testimony, both as to the making of the contract and as to the work done by him under it, was supported by the testimony of his four children, two of whom had worked with him on the farm for some time before and after Arthur's death. The farm in question had been built up and developed into a sizable dairy farm, requiring about thirty head of cattle.

The defendant, on the other hand, denied that the plaintiff worked for Arthur under any agreement for wages, and flatly denied the making by herself of any agreement with the plaintiff; and, in this, she was substantially corrobor-

ated by her brother, whose testimony was taken by deposition, and by her son, Arthur Anderson, who was about ten or twelve years old when the alleged agreement was made.

The trial justice, applying a correct statement of the law applicable to the facts in this case, instructed the jury as follows: "Now, your verdict should be based on the evidence in the case. You have seen the witnesses, you have listened to them, you have observed them. If you can reconcile the testimony of all the witnesses you should do so. If you cannot reconcile the testimony of all the witnesses, then it is for you to determine which witness or which group of witnesses is telling the truth. That is your job. You are the judges of the facts in this case." No exception was taken by either party to the charge to the jury as given.

This court has many times considered the powers and duty of a trial justice in deciding a motion for a new trial. *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180, 189 A. 14, and cases cited. Generally speaking, at least two rules for the guidance of a trial justice in passing on such a motion are well established by the decisions of this court. First, when the evidence is such that different minds may reasonably and fairly come to different conclusions therefrom, the trial justice should not disturb a verdict of the jury, even though his own personal judgment might incline him to a contrary conclusion. Second, when in his sound judgment the verdict is wrong because it fails to respond truly to the real merits of the case, and is not supported by a fair preponderance of the evidence, then it is his duty to set the verdict aside and to grant a new trial. *Nichols v. New England Tel. & Tel. Co., supra.*

This court accordingly has given great weight to the opinion of the trial justice on the question of his approval or disapproval of a verdict, although his opinion is not conclusive. To be entitled to such consideration, however, the

opinion of the trial justice must be based upon the evidence, or some valid reason appearing in the record of the case. This court will not give the decision of a trial justice, on a motion for a new trial, the weight and persuasive force which it would otherwise accord such a decision, if it is apparent from an examination of the entire record that the decision of the trial justice is based upon a misconception of the evidence, and that he omitted to consider evidence tending fairly and sufficiently to support the verdict. See *Hamilton Co.* v. *Rosen,* 58 R. I. 35, 191 A. 255.

The trial justice in the instant case disapproved the verdict in no uncertain terms, but a careful examination of the transcript by us shows that his disapproval is based, to a considerable extent, upon a misconception of important testimony and upon reasons not validly appearing in the record. However, it is not difficult to understand this because the trial justice gave his decision from the bench several months after trial and immediately following the hearing on the defendant's motion for a new trial. Moreover, the testimony of the plaintiff was not easy to keep in mind, without a transcript, because he was an elderly man, not too alert mentally, and had to testify through an interpreter.

In his decision, in commenting upon the plaintiff's testimony, the trial justice says: "But the witness testified one full day before he said anything about a promise to pay $45 per month, and it was only in re-direct . . . that the plaintiff did say that the defendant had promised to pay $45 per month." Again, in commenting upon the testimony of the plaintiff's children respecting the agreement in question, he says: "Now, all of the children testified that there was a conference, and although the father testified two days before he said anything about $45 being promised him per month, and his failure to make the statement was not due to lack of probing on the part of counsel for the plaintiff, these children testified one after another . . . that the de-

fendant told the old man, 'Now we'll go along as before and your wages will be $45 per month.' "

The trial justice apparently misconceived or overlooked some pertinent testimony in making such statements. The transcript clearly shows that the plaintiff testified concerning the agreement in the early part of his direct examination, also in cross-examination and again in re-direct examination. It also appears that the defendant did not deny that there was a conference at which the plaintiff and certain of his sons were present. In fact, she admitted that she had called the conference to seek an adjustment of the interest on promissory notes of her deceased husband held by the sons, which represented loans they had made to him. She did not testify that the other children were not present at such conference, but merely stated "she did not remember" if all of them were present. Nor did she deny that at such conference, she agreed to raise the wages of Harold Anderson from sixty to seventy dollars a month, all of which was testified to by the children who claimed to have been present. She likewise admitted that the plaintiff had done some work for her late husband and had continued similar work after the latter's death, which work was approved by her, and that she had given him small amounts of money therefor, but not as wages.

The trial justice also in his decision on the motion for a new trial made another statement which is seriously disputed by the evidence. He states that: "His (the plaintiff's) son never gave him any wages and they never discussed wages; no question about that." Here again the trial justice evidently overlooked some of the testimony, because the record discloses much conflicting testimony in the transcript on this point. Certainly it was testified by at least the plaintiff and the son Harold Anderson, who had worked with him in building up the farm for the defendant's late husband, that the latter agreed to pay the plaintiff for his work on the farm at the monthly rate of

forty-five dollars. It will be noted that this son's testimony that he attended the conference at which the defendant agreed to increase his wages from sixty to seventy dollars per month was admitted by the defendant. She also admitted that her late husband was custodian of a bankbook belonging to the plaintiff, and there is nothing in the record to explain how the plaintiff would have any other income to provide a savings account if he were not receiving wages as testified. At any rate, the testimony in the record, tending to establish that the plaintiff worked for certain wages as agreed to by Arthur, is not inherently improbable or otherwise so contradictory as to render it unworthy of any credibility.

It thus appears, from these and other statements of the trial justice, that his decision is predicated largely upon a misconception or oversight of important testimony, and substantially upon his impression that the only evidence of the agreement was given by the plaintiff's children, whom he personally did not believe. True, enough, the witnesses for the plaintiff were his children and, in that sense, were interested; but on the other hand, the witnesses for the defendant were her second husband, her brother, whom the jury did not see, and her minor son, all of whom were equally interested. The record before us discloses no valid and sufficient reason for completely ignoring the testimony of one group of interested witnesses, who were apparently believed by the jury, and in accepting the testimony of the other equally interested group, whom the jury did not believe.

From our examination of the whole transcript, the testimony appears to be sharply conflicting. The issues were entirely factual, and their determination depends largely upon the credibility to be accorded the various witnesses. The jury, under proper instructions of the court, evidently believed the plaintiff and his witnesses, and, if so believed, their evidence sufficiently supports the verdict.

Under these circumstances, we are of the opinion that the trial justice was not warranted, for any reason assigned by him and appearing in the record, in concluding that the verdict was contrary to the evidence and the weight thereof; and, therefore, his granting of the defendant's motion for a new trial was erroneous. See *Hamilton Co.* v. *Rosen, supra.*

The plaintiff's exception to the decision of the trial justice granting the defendant's motion for a new trial is sustained. The case is remitted to the superior court with direction to enter judgment on the verdict for the plaintiff.

*Francis I. McCanna, James O. Watts, George F. McCanna,* for plaintiff.

*Hartigan, Mullen & Roberts, Arthur Novogroski, Dennis J. Roberts,* for defendants.