ANNA IWANICKI *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

MAY 24, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of the case in assumpsit on a policy of life insurance. The jury, after a trial of the case in the superior court, returned a verdict for the plaintiff in the sum of $1071.63. The defendant thereupon filed a motion for a new trial based on the usual grounds. The trial justice granted this motion unless the plaintiff should file, within a specified time, a remittitur of all of the verdict in excess of $535.82. The plaintiff did not file such remittitur but prosecuted her bill of exceptions to this court. The only exception contained in said bill of exceptions and now before us is to the above decision of the trial justice.

The policy sued on was upon the life of Stephen Iwanicki, now deceased, the husband of the plaintiff, who was designated in the policy as beneficiary. The amount of insurance named in the policy was $500. A rider, for which no extra premium was demanded or paid, was attached to the policy and contained in part the following provisions: "Industrial Policy Accidental Death Benefit. Upon receipt of due proof that the Insured, . . . has sustained, . . . bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the Insured . . . the Company will pay in addition to any other sums due under this Policy and subject to the provisions of this Policy an Accidental Death Benefit equal to the face amount of insurance then payable at death, . . . ", except under certain circumstances not involved in this case. The rider in question also contained the following language: "No Accidental Death Benefit will be paid . . . if death is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity, . . . ."

The defendant admits that the plaintiff is entitled to recover from it the sum of $500 with interest. The only dispute between the parties relates to the right of the plaintiff to recover from the defendant an additional similar amount under the provisions of the Accidental Death

Benefit clause as set out in the above-mentioned rider attached to the policy. In substance, the question at issue between the parties is whether or not the insured died solely through external, violent and accidental means, directly and independently of all other causes. The plaintiff maintains that the evidence submitted shows that the death of her husband came about in such a manner that the above clause relating to the Accidental Death Benefit applies. On the other hand, the defendant contends that from such evidence it appears that the insured died from causes not solely connected with the accident suffered by him, but from causes independent thereof.

We are not concerned here with the meaning and scope of the language appearing in the rider, because the plaintiff's bill of exceptions contains no exception to the charge of the trial justice, and thus the charge as given becomes, for present purposes, the law of the case. The only question before us, in these circumstances, is whether or not the trial justice was clearly wrong in his judgment upon the weight of the evidence, in view of the legal construction given by him in his charge to the pertinent language of the rider.

The record shows that the insured, who was a carpenter in good health and approximately forty-five years of age, was working on a ladder repairing a house in Central Falls in the late afternoon of June 28, 1935. In some manner the ladder slipped and the insured, who was standing thereon four or five feet from the ground, fell backward. There is testimony that he called out and held his head with his hands, but unquestionably the chief injury suffered by him was to his left ankle which was severely fractured in three places and bled considerably, a portion of the bone protruding through the skin. He was at once taken to the office of a doctor, who ordered him removed to the hospital in Central Falls. There he received the usual treatment

for such an injury, and on the whole appeared to be progressing normally.

During the evening of June 30 he became very excited, got out of bed and tried to jump from a window, as a result of which conduct an attempt was made to confine him in the hospital strait-jacket. As this treatment did not prove very successful, police of Central Falls were called in and the police department strait-jacket was applied to the insured. Thereafter, he received the attention apparently called for under these circumstances, but died rather suddenly and unexpectedly about 6:15 o'clock on the morning of July 1. No autopsy was performed to ascertain the cause of his death, which was given by his attending physician as cerebral empolism, acute cerebral edema, acute alcoholic mania.

The plaintiff takes the position that the evidence supports her contention that her husband died of a cerebral embolism, emanating from the injury to his ankle and that, therefore, she is entitled to receive from the defendant the accidental death benefit covered by the provisions of the before-mentioned rider attached to the policy sued on. The defendant, however, maintains, in substance, that the evidence shows that the insured died from acute cerebral edema and acute alcoholic mania brought on by the use of alcoholic liquor; that the injury to the ankle was at most a contributing cause of death; that he did not die from a cerebral embolism and hence, that the plaintiff is not entitled to any recovery under the terms of the rider in question.

Considerable evidence was submitted by both parties in relation to the alleged use of alcoholic liquor by the insured. Without going into details, the evidence for the plaintiff tended to show, among other things, that the insured was a steady worker and had a good reputation; that especially during the four or five years next prior to the accident and since he had been married to the plaintiff,

he drank only occasionally; that two men who worked with him on the job where he was hurt noticed no odor of alcohol from him; and that in the hospital on the night of June 30, while the insured was excited and the police officers were present, and it was suggested that he be given a small amount of alcoholic liquor, he refused it, stating that he had not taken any in three months.

On the other hand, evidence presented upon behalf of the defendant by police officers of Central Falls tended to show that the insured was a more or less steady drinker; that they had seen him under the influence of liquor on the street on numerous occasions, but not in such a condition as to require his arrest; that about eight years before the accident he had been arrested and fined for drunken reveling; that on several other occasions it had been necessary to quiet him, more particularly, however, before he married the plaintiff. Other evidence for the defendant was to the effect that the doctor to whom the insured was taken immediately after the accident, and who ordered him to the hospital, smelled the odor of alcohol from his breath, and that the superintendent of the hospital noticed a similar slight odor of alcohol on the morning of June 29 when she was making her rounds in the hospital. Also, the hospital record of the personal history and physical examination of the insured, which record, according to the evidence, was made up and signed by the attending physician. under the heading of past history, contained the following entry: "Heavy alcoholic drinker."

The plaintiff offered as a witness a physician who was an expert in nervous and mental diseases, and who testified that in his opinion the insured died solely because of a cerebral embolism which originated from his fractured ankle. This witness gave fully the reasons upon which he based his opinion, and he was cross-examined at length by the defendant's attorney.

The defendant placed on the stand the doctor who attended the insured, and who signed the paper upon which was stated the cause of the insured's death. This witness testified that in his opinion, Iwanicki died of "heart failure due to exhaustion brought on by delirium tremens." He also gave evidence, in explanation of the stated cause of death, that he had written "cerebral embolism" for the sake of the deceased's family, rather than the true cause; that in his judgment the deceased did not have a cerebral embolism; and that the other two causes were included by the witness at the suggestion of the medical examiner.

The latter, who did not see the insured until after his death, and who relied chiefly on the hospital record, testified in substance that in his opinion, based to some extent on the assumption that Iwanicki was a steady drinker, he died from acute cerebral edema and acute alcoholic mania, and that the injury to his ankle was merely a contributing cause. This witness found that the insured's death was not caused by a cerebral embolism.

The defendant also offered the testimony of a physician of standing who qualified as an expert diagnostician. He gave evidence that he had heard the various witnesses testify at the trial, and that in his opinion "this man died as a result of alcoholic poisoning manifesting itself in all probability as edema of the brain, or wet brain, and delirium tremens and acute alcoholic mania, and that there was also a contributing factor of a fracture of the left ankle which precipitated the disastrous results from alcohol."

All this sharply conflicting and irreconcilable evidence on the two important issues raised at the trial, namely, the amount of use of alcoholic liquor indulged in by the insured, and the exact cause of his death, clearly raised disputed questions of fact. These had to be passed upon in the first instance by the jury, and thereafter by the trial justice on the defendant's motion for a new trial, particularly in

connection with the weight of the evidence and the credibility of the witnesses.

In deciding this motion, the trial justice filed a carefully considered rescript in which he stated that he was convinced that the verdict was against the weight of the evidence. We find nothing in this rescript to indicate that the trial justice was merely in doubt as to the correctness of the jury's verdict. His disapproval of the verdict was positive. In this respect the instant case differs from the situation presented in the case of *Somerset Realty Co.* v. *Shapiro,* 51 R. I. 417, cited to us by the plaintiff. Neither does it appear that the trial justice misconceived the evidence, or failed to consider evidence which tended to support the verdict, as appeared in *Anderson* v. *Johnson,* 59 R. I.. 241, 195 A. 240, thereby differentiating that case from the present case.

The rule to govern and to be applied by a trial justice in carrying out his duties in passing upon a motion for a new trial has been set out fully in *Wilcox* v. *Rhode Island Co.,* 29 R. I. 292, *McMahon* v. *Rhode Island Co.,* 32 R. I. 237, and in other cases subsequently decided by this court. It has been held, in substance,. that if the superior and more comprehensive judgment of the trial justice teaches him that the verdict of the jury fails to administer substantial justice to the parties, then a new trial should be granted by him. The fact that he has had the opportunity of seeing and hearing the witnesses testify, an advantage not given to us, is of great aid in enabling him to weigh the evidence, pass upon the credibility of. the witnesses, and determine whether or not the jury's verdict meets the above requirement.

A careful consideration of the record herein leads a majority of the court to the conclusion that the trial justice, in passing upon the defendant's motion for a new trial herein, attempted to perform the duties devolving upon him in that connection, as laid down in the decisions of

this court, and that he was not merely substituting his own view of the evidence in the case for that of the jury's, as argued by the plaintiff. It is settled that this court will not disturb the decision of a trial justice who has granted a motion for a new trial on the ground that the verdict is against the weight of the evidence, unless it is made to appear that such decision was clearly erroneous. *Surmeian* v. *Simons,* 42 R. I. 334; *Simmons* v. *Simmons,* 56 R. I. 222.

In view of all the conflicting evidence in the instant case, a majority of the court cannot say that the decision of the trial justice granting the defendant's motion for a new trial was clearly wrong, and the plaintiff's exception, therefore, is overruled.

In view of the defendant's admission of liability on the policy in the amount of $500 with interest, and of the other special circumstances appearing herein the case is remitted to the superior court for a new trial, unless the plaintiff, on or before June 3, 1938, shall file in the superior court a remittitur of all of the verdict in excess of $535.82. In case the plaintiff shall duly file such remittitur, the superior court is directed to enter its judgment for the plaintiff for $535.82.

*Henry E. Crowe, Thomas Hetherington,* for plaintiff.

*Tillinghast, Morrissey & Flynn, M. Walter Flynn,* for defendant.