ARTHUR V. DOWNES *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

LESTER R. DOWNES *vs.* SAME.

JUNE 5, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. These two actions of trespass on the case

for negligence by a father and his son were tried together to a jury in the superior court and after verdicts for the plaintiffs the cases were brought to this court on identical exceptions. The only exceptions pressed before us, all others being expressly waived, relate to the refusal of the trial justice to direct a verdict for defendant and to his denial of its motion for a new trial in the case of the son Arthur V. Downes, and in the case of the father Lester R. Downes, to the denial of such motion subject to a remittitur which has been duly filed. No question of damages is involved. Since the father's case is dependent upon that of his son, we shall hereinafter consider the points raised as though the case of the son was the only one here, but our conclusions will apply to both.

The accident happened December 3, 1947 about 6:30 p.m. on the northerly crosswalk of Dorrance street, which runs approximately north and south, at its intersection with Weybosset street, which runs east and west, both being main and heavily-traveled highways in the city of Providence. Westminster street lies to the north of and runs parallel to Weybosset street. Weather and lighting conditions were good.

The defendant's bus, which was northbound, struck plaintiff as he was crossing from the northeasterly to the northwesterly corner of Dorrance and Weybosset streets on the above-described crosswalk. Before reaching the intersection heretofore mentioned the bus had to pass the main entrance to the Narragansett Hotel, which was located about 200 feet to the south. It clearly appears of record that plaintiff, who was on his way home from work, was struck by the right front end or front right side of· the bus and that he was thrown to the ground, falling on his back about opposite the front door of the bus. At the time of the impact he was on the crosswalk and some seven to ten feet from the curb of the northeasterly corner of Dorrance street. In addition to certain minor injuries, plaintiff sus-

tained a "compound basal skull fracture" with "a laceration and tearing of the brain," which latter condition required a "craniotomy," that is, the opening of the skull at the "temporal region" on both sides.

There was considerable testimony both from pedestrians and bus passengers respecting what they saw or believed they had seen at the time of the accident, estimates of the speed of the bus and of its distance from fixed points at different times, a description of certain pertinent parts of the bus, the position of plaintiff's body on the highway immediately after the collision, and photographs designed to illustrate various phases of the testimony. It is unnecessary to relate such evidence in detail, as in our judgment an outline in general terms of the claims of the respective parties appearing of record is sufficient in the circumstances.

The evidence for plaintiff in substance was that before leaving the curb at the northeasterly corner of the intersection he looked to his left across Weybosset street for northbound traffic on Dorrance street and saw the bus about opposite the main entrance to the Narragansett Hotel, some 200 feet away, moving towards the southerly crosswalk of the intersection at a moderate rate of speed. He then looked to his right towards Westminster street and, seeing no traffic coming from that direction, he started to cross Dorrance street on the northerly crosswalk of the intersection. As soon as he stepped off the curb onto the roadway he looked up Weybosset street to see if any vehicles coming from that direction might, by making a left turn into Dorrance street, impede his progress. Seeing no such traffic, he continued to cross and when he had gone about ten feet he again looked to his left and saw the bus "right on top" of him, that is, "15 to 18 feet away" and moving towards him at a speed of "Between 28 and 30 miles an hour." Upon being asked what he did in that situation, plaintiff's answer was: "Well, the bus seemed to be veering

toward me, I just froze, I couldn't do anything, and I was struck."

The defendant's version of the accident was quite different. In brief, the evidence in its behalf was to the effect that the operator of the bus saw plaintiff, who was looking towards Westminster street, just as he was stepping from the curb at the corner in question, at which time the bus was ten or twelve feet from him and moving at a speed of eight to ten miles an hour; that the operator thereupon slowed down "letting the bus roll across"; that when plaintiff had stepped into the gutter of the street, "he stopped, hesitated" and then, suddenly taking two or three steps while still looking toward Westminster street, he "walked right square" into the moving bus, which "came to a stop the moment he walked into it"; and that he fell to the ground flat on his back at a right angle with the bus, his head being within ten inches of the curb at the northeasterly corner. There was no evidence that any warning signal was given by the operator of the bus, nor was there any evidence that he tried to stop before striking plaintiff.

Under the exception to the denial of its motion for a directed verdict defendant contends "that in walking ten feet out into the street and ignoring the oncoming bus until it was on top of him, so close that he said that he could not even take one step backwards, he was guilty of contributory negligence as a matter of law." The contention as thus expressed disregards material evidence which, if believed, had an important bearing on the question of plaintiff's due care. In determining that question it is necessary to keep in mind that the accident happened at the intersection of heavily-traveled highways and that, according to plaintiff's testimony, the bus was well to the south of the intersection when he started to cross Dorrance street on its northerly crosswalk.

In the circumstances as related by plaintiff, ordinary care would require that he reasonably protect himself against

danger not only from the bus but also from vehicles that might be coming towards him from other directions. Considering the location of the bus, as testified to by him, when he started to cross Dorrance street he had a right to assume that it would approach and cross the intersection in accordance with the rules of the road, general laws 1938, chapter 88, §2, and in compliance with traffic regulation No. 48, sec. 13, of the city of Providence, which regulation is in evidence and provides: "The operator of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block * * *." *Andrews* v. *Penna Charcoal Co.*, 55 R. I. 215; *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co.*, 58 R. I. 451; *Pucciarelli* v. *United Electric Rys.*, 64 R. I. 269.

The instant case is not to be confused with that class of cases where this court has held that the failure of a pedestrian to look before crossing a street in the path of oncoming traffic constitutes negligence as a matter of law. *Sarcione* v. *Outlet Co.*, 53 R. I. 76. Here, when all the circumstances of record are taken into consideration and applying thereto our well-settled rule that on a motion for a directed verdict the evidence must be viewed most favorably to plaintiff, irrespective of its weight or the credibility of the witnesses, the question of whether plaintiff exercised the care that an ordinary prudent person would have used in the same or similar circumstances was clearly an issue of fact for the jury to determine. This exception is overruled.

The gist of defendant's contention as stated in its brief under the exception to the denial of its motion for a new trial is as follows: "If this Court does not feel that the plaintiff was guilty of contributory negligence as a matter of law, it is still another matter to say that the Trial Justice was correct in holding that the jury hadn't erred in finding that the *weight of the evidence* showed as a factual

matter that the plaintiff was acting as an ordinarily prudent man would have acted in failing to look again before walking out in front of this bus that he knew was approaching." (italics ours) No question is raised by defendant that the trial justice misconceived or overlooked material evidence or that he failed to apply the correct rules of law governing such a motion. The gravamen of its complaint, which is based upon a lengthy argument reviewing and contrasting the evidence in detail, is that the testimony of its witnesses, when compared to that of plaintiff's witnesses, was entitled to greater credence.

On this point, defendant takes a distinctly opposite view of the credibility of the witnesses for plaintiff from that entertained by both the jury and the court. The trial justice in his rescript fully recognized that "The evidence as to liability was in close balance and was such that reasonable minds could naturally and fairly reach different conclusions thereon, credibility and weight being considered." Then, after reviewing in detail the evidence and the testimony of the material witnesses, he found that plaintiff was "a credible witness. The manner in which he testified was persuasive of his truthfulness. * * * While the testimony of the defendant's witnesses contradicted that of the plaintiff and his witnesses, this Court does not perceive that any material testimony of the plaintiff was thereby impeached or rendered inherently improbable. At most, the defendant's witnesses presented for the consideration of the jury conflicting testimony concerning the accident which was not of such character as to preclude the jury's finding for the plaintiff, as it did." His conclusion was that the verdict responded "to the true merits of the controversy" and did substantial justice between the parties.

It is a settled rule governing a motion for a new trial that where there is conflicting evidence of substantially equal weight, which would naturally and fairly lead different minds to different conclusions, and the jury in such circumstances has found for the plaintiff, a trial justice is not

justified in granting a new trial even though he may entertain doubt as to the correctness of the verdict, or his judgment inclines against the jury's finding. *Ricci* v. *New England Transportation Co.*, 77 R. I. 12; *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180. Furthermore we will not disturb the decision of a trial justice on conflicting evidence unless it is clearly wrong, especially when the credibility of witnesses is a vital question in the case. In that connection the trial justice had the opportunity of seeing and hearing the witnesses while testifying, an advantage which we do not have. After reading the transcript and comparing our understanding of the evidence with the rescript of the trial justice, we cannot say that in the circumstances his decision was clearly wrong.

In each case all of the defendant's exceptions are overruled. The case of Arthur V. Downes v. United Electric Railways Company is remitted to the superior court for entry of judgment on the verdict. The case of Lester R. Downes v. same is remitted to that court for entry of judgment on the verdict as reduced by the remittitur.

*John C. McOsker,* for plaintiffs.

*Frank J. McGee,* for defendant.